IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

CARMEN D. BURGOS-YANTIN, et al.

    Plaintiffs,

    v.

MUNICIPALITY OF JUANA DIAZ, et al.

    Defendants.

Civil Action No. 07-1146 (GAG)

<u>OPINION AND ORDER</u>

    Plaintiffs Carmen D. Burgos-Yantin, Carlos Manuel Echevarria-Moreau, Joshua D. Cancel-Marquez, Luis Alberto-Marquez-Burgos, Luis Antonio Marques-Burgos, Carmen D. Marquez-Burgos, Lucianne Marques-Burgos, Carlos M. Echevarria-Burgos, Carla M. Echevarria-Burgos, Melissa Ruiz-Echevarria and Osvaldo Medina-Mercado (collectively "Plaintiffs") commenced this action seeking money damages against the Municipality of Juana Diaz, its mayor, Ramon A. Hernandez-Torres, its Police Commissioner, Pablo Rodriguez-Germain ("Rodriguez"), Juana Diaz Municipal Police ("JDMP") Lt. Angel Colon-Gonzalez ("Colon"), the Superintendent of the Puerto Rico Police Depatrment ("PRPD"), Pedro Toledo-Davilla, PRPD Lt. Diosdado Perez-Santiago (collectively "Supervisors" or "Supervisory-Defendants"), JDMP Officer Miguel Torres-Santiago ("Torres"), JDMP Officer Gary Conde-Gonzalez ("Conde"), JDMP Officer Jerica Echevarria-Ortolaza ("Echevarria"), PRPD Officer Jose Alvarado-Almodovar ("Alvarado"), and PRPD Officer Juan C. Melendez-Rivera ("Melendez") (collectively "Officers" or "Officer-Defendants"). Plaintiffs filed this claim pursuant to 42 U.S.C. § 1983 ("§ 1983"), alleging that the defendants committed acts, under the color of law, which deprived Miguel Angel Burgos of rights secured under the Fourth Amendment to the United States Constitution.

    This matter is currently before the court on Defendants' motions for summary judgment. (Docket Nos. 193; 196.)  After reviewing the pleadings and pertinent law, the court **GRANTS** in

**Civil No. 07-1146(GAG)**                            2

part and **DENIES** in part Defendants' motions for summary judgment.

**I.      Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party (here, the plaintiff) and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**Civil No. 07-1146(GAG)**                          3

**II.      Relevant Factual & Procedural Background**

On October 28, 2006, plaintiff Osvaldo Medina-Mercado ("Medina") was driving a burgundy Mitsubishi Mirage on the boardwalk of the Camboya sector in Juana Diaz, Puerto Rico. Jose Anibal Esmurria-Acevedo ("Esmurria") and Miguel Angel Burgos ("Burgos") were passengers in the vehicle. The vehicle was stopped by JDMP Officers Torres and Conde for violations of Puerto Rico Traffic Law 22.[1]

Following the stop, the parties' accounts of what occurred next differ greatly. Plaintiffs contend that following this traffic stop Officers Torres and Conde as well as various other Officers of the PRPD Tactical Operations Division approached the vehicle brandishing their firearms and pointing them at the car. Medina then put the car in motion and Officer Torres and various other PRPD officers fired several shots at the car. Plaintiffs then allege, in their complaint, that Medina stopped the car and Officer Torres approached the car and shot point blank at Burgos, hitting him in the back of the head and at Medina, hitting him in the knee.

Defendants aver a different version of the events. Defendants contend that following the traffic stop, Officer Conde noticed that the driver pulled out a black colored firearm with his right hand and place it below the seat. Officer Conde then informed Officer Torres that the persons in the car were armed. PRPD Officer Alvarado arrived at the scene and was informed by Officer Torres that the occupants of the vehicle were armed with a gun. Officer Alvarado then told the driver of the vehicle to turn off the car and get out. Ignoring the officers' requests, the driver then started the car and drove off in the direction of Officers Conde and Torres. Officer Alvarado then asserts that the passenger in the front turned around with a weapon and pointed it towards him. Alvarado then proceeded to shoot at the tires of the vehicle. Officers Conde and Torres assert that the passenger in the front of the vehicle then pulled his torso outside the window and pointed a weapon at them. The officers then aver that they heard Medina order Esmurria to shoot at them. The car was headed

---

[1] The officers stopped the driver for failing to wear a seatbelt while driving.

**Civil No. 07-1146(GAG)**                    4

directly for Officer Conde.  Officer Torres pushed Officer Conde out of the way of the car and then told the occupants of the car to stop.  Torres contends that Medina disregarded this command and Esmurria continued to point the gun in the direction of Officer Torres.  Officer Torres then fired several shots at the vehicle.

In their complaint, Plaintiffs allege that Medina drove to Burgos' home where Carmen Burgos-Yantin, Burgos' mother, got in the car and rushed Burgos to the nearest hospital.  The police did not continue to pursue the car after the encounter.  When Burgos arrived at the hospital, the doctor called the police to report a gun shot victim.  An officer arrived at the hospital and stated that no shooting had been reported by any law enforcement officer.  Plaintiffs' contend that PRPD Officer Alvarado and various other PRPD officers arrived at the hospital and began harassing Burgos' mother and Medina.  They then handcuffed Medina to the bed.  Burgos died the next day as a result of the injuries sustained from a gunshot wound.

**III.    Legal Analysis**

Defendants argue that Plaintiffs have failed to state a claim upon which relief can be granted under 42 U.S.C. § 1983.  (See Docket No. 196 at 6.)  In order for a claim to be cognizable under § 1983, a plaintiff must plead and prove three elements of the cause of action: (1) that the defendants acted under color of state law; (2) that plaintiffs were deprived of federally protected rights, privileges or immunities; and (3) that the defendants' alleged conduct was causally connected to the plaintiff's deprivation.  Gutierrez–Rodriguez v. Cartagena, 882 F.2d 553, 558 (1st Cir. 1989).  This causal connection may consist of direct acts by the defendant, or certain acts performed at the defendant's direction or knowledge and consent.  See Rizzo v. Goode, 423 U.S. 362, 370 (1976).  When finding liability based upon acts performed at a defendant's direction or knowledge and consent, proving causation requires plaintiffs to demonstrate three elements.  See Gutierrez–Rodriguez, 882 F.2d at 562.  Plaintiff must show that (1) each supervising defendant's acts or omissions caused the deprivation of the right at issue; (2) that the supervising defendant's conduct or inaction was intentional, grossly negligent, or amounted to a reckless or callous

**Civil No. 07-1146(GAG)**                              5

indifference to the constitutional rights of others; (3) and that there is an affirmative link between the street level misconduct and the action, or inaction, of the supervisory officials. See Velazquez-Martinez v. Colon, 961 F. Supp. 362, 365 (D.P.R. 1997).

The asserted claims are against various defendants who the plaintiffs contend are liable under § 1983 for both supervisory and street-level misconduct. The court will assess these separate levels of liability individually.

   *A.      Individual Liability of Officers Torres and Alvarado*

Plaintiffs aver that, acting under the color of state law, the officers murdered Burgos without cause, provocation or warning in violation of the Fourth Amendment to the United States Constitution. To recover under § 1983 for a Fourth Amendment violation, a plaintiff must demonstrate that the force used by the defendant was objectively unreasonable given the totality of the relevant circumstances. See Bastein v. Goddard, 279 F.3d 10, 14 (1st Cir. 2002). The use of deadly force is constitutional only if an officer has "probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others". See Tennessee v. Garner, 471 U.S. 1, 3 (1985).

In responding to Defendants' allegations that the officers acted reasonably under the circumstances, Plaintiffs have proffered the testimony of Medina, in which he states that no one in the car was armed at the time of the traffic stop. (See Docket No. 217-2 at 2.) If a jury were to find this witness credible, such a use of deadly force would appear to have no justification. This assertion is sufficient to establish a triable issue of material fact as to whether or not the occupants of the vehicle were armed. See Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) ("The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists."). Moreover, Plaintiffs have provided expert testimony to support their contention that even if the occupants of the vehicle were armed, the officers actions in conducting the intervention were objectively unreasonable given the overall circumstances that were presented. (See Docket No. 217-7 at 10-14.) Through production of this evidence, Plaintiffs have demonstrated a triable issue of material fact as to whether or not the officers

**Civil No. 07-1146(GAG)**         6

actions were objectively reasonable given the circumstances.

Therefore, this court **DENIES** Defendants' motion for summary judgment with respect to the liability of Officers Torres and Alvarado.

       B.     *Individual Liability of Officers Colon, Conde, Echevarria, and Melendez*

Plaintiffs do not allege any affirmative action taken by Officers Colon, Conde, Echevarria or Melendez that led to Burgos' death. However, they aver that because they were present during the intervention and failed to intervene to prevent the use of deadly force by their fellow officers they are individually liable. The First Circuit has held that "[a]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance" Gadreault v. Municipality of Salem, Mass., 923 F.2d 203, 207 (1st Cir. 1990). However, the court went on to state that "[a] police officer cannot be held liable for failing to intercede if he has no 'realistic opportunity' to prevent an attack". Id.; cf. Calvi v. Knox County, 470 F.3d 422, 428 (1st Cir. 2006) ("a bystander officer who has a realistic opportunity to prevent the use of excessive force by a fellow officer may in certain circumstances be held liable for failure to intervene.")

With respect to Officer Melendez, Plaintiffs offer no evidence rebutting his contention that he was not present during the intervention. (See Docket No. 197-8.) An officer that is not present at the intervention has no realistic opportunity to intervene. See Cunningham v. Gates, 229 F.3d 1271, 1290 (9th Cir. 2000). With regard to Officer Echevarria, Plaintiffs offer no evidence demonstrating that she had any realistic opportunity to intervene as it is undisputed that she did not see the intervention occur. (See Docket No. 197 at 4.) Therefore, the court **GRANTS** summary judgment in favor of Officer-Defendants Melendez and Echevarria on this ground, and dismisses all claims against them for failure to intervene.

With respect to the liability of Sgt. Colon and Officer Conde, their accounts of the intervention describe two periods of time in which the officers shot at the car. (See Docket Nos. 217-4 at 2,4; 217-3.) According to the deposition of Officer Conde, about 20-30 seconds passed between the firing of the first and last shots, and throughout that time he was with Officer Torres.

1  **Civil No. 07-1146(GAG)**                    7

2  (Docket No. 217-4 at 8.)  While the testimony of the Officers makes it seem highly unlikely that

3  there was a realistic opportunity to intervene, Plaintiffs have disputed the officers' accounts of the

4  events, asserting that no one in the car was armed.  If the jury finds Medina's testimony to this effect,

5  to be credible, then based on the evidence presented, a reasonable jury could find that the 20-30

6  seconds it took for the event to unfold provided a "realistic opportunity" for the present officers to

7  intervene and prevent either Officer Alvarado or Torres from using excessive force.

8          Further, Colon, as Torres' supervisor, had a heightened duty to intervene to prevent another

9  officer from using excessive force.  See Herrera v. Davilla, 272 F. Supp. 2d 154, 162 (D.P.R 2003)

10  ("In the case of supervisory officers, the duty to intervene and to exercise appropriate command

11  functions is greater.")  Sgt. Colon testified that he saw the intervention occur and that he also saw

12  Alvarado remove his weapon.  (Docket No. 217-3 at 3.)  He then saw Conde and Torres run towards

13  the vehicle and heard several more shots.  Id.  Colon further testifies that he did not see any of the

14  occupants of the mirage holding a gun.  Id. at 4.  These facts, coupled with Plaintiffs' contentions,

15  create a issues of material fact as to whether there was a realistic opportunity for the officers to

16  intervene.  See Anderson v. Branen, 17 F.3d 552, 557 (2nd Cir. 1994) ("Whether an officer had

17  sufficient time to intercede or was capable of preventing the harm being caused by another officer

18  is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not

19  possibly conclude otherwise").

20          Because a question exists as to whether there was sufficient opportunity for Sgt. Colon and

21  Officer Conde to intervene, the court **DENIES** summary judgment with respect to the liability of

22  Sgt. Colon and Officer Conde.

23          *C.    Municipal and Supervisory Liability*

24          In cases where the plaintiff alleges that a supervisor's conduct has caused a constitutional

25  deprivation, the Supreme Court has firmly rejected *respondeat superior* as a basis for the liability

26  of supervisory officials.  See Votour v. Vitale, 761 F.2d 812, 819 (1st. Cir. 1985) (citing Monell v.

27  Department of Social Services, 436 U.S. 658, 694 (1978)).  Plaintiffs asserting such a claim must

28  show that each defendants' acts or omissions directly caused the deprivation of the rights at issue.

**Civil No. 07-1146(GAG)**                                    8

See Cepedo-Rivera v. Fagundo, 414 F.3d 124, 129 (1st. Cir. 2005)(citing Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91-92 (1st. Cir. 1994)).  Absent direct participation, a supervisor may only be held liable where "(1) the behavior of his subordinates results in a constitutional violation, and (2) the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." Pineda v. Toomey, 533 F.3d 50 (1st. Cir. 2008) (internal quotations omitted).  "Allegations that a supervisor failed to train his subordinate officers and that he should be held liable for such failure, without identifying the factual underpinnings of such failure, nor identifying the causal nexus between the failed training and the subordinate's misconduct, are not enough to sustain a claim of liability under Section 1983." Rossi-Cortes v. Toledo-Rivera, 540 F. Supp. 2d 318, 324 (D.P.R. 2008).

Theories of *respondeat superior* are also inapplicable to questions of municipal liability. See Swain v. Spinney, 117 F.3d 1, 11 (1st. Cir 1997).  For a municipality to be held liable for constitutional deprivations under § 1983 the plaintiff must be able to demonstrate that "through its deliberate conduct, the municipality was the moving force behind the injury alleged.  That is, a plaintiff must . . . demonstrate a direct causal link between the municipal action and the deprivation of rights." Board of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  "A city's policy of inadequately training its police force can serve as a basis for § 1983 liability if the city's failure to train 'amounts to deliberate indifference to the rights of persons with whom the police come into contact.' Whitfield v. Melendez-Rivera, 431 F.3d 1, 9-10 (1st. Cir. 2005) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).  A plaintiff must  prove that the "deficiency in training actually caused the police officers' indifference to the public's constitutional rights." Id. (internal quotation omitted).

Plaintiffs have proffered an affidavit of expert witness Lou Rieter as their primary source of evidence demonstrating the liability of the Supervisors.  (See Docket No. 217-7.)  Rieter opines, based upon his review of the facts of the event, that the policymakers as well as the supervising officers within the JDPD and the PRPD have failed to adopt certain administrative measures that

**Civil No. 07-1146(GAG)**                                  9

would have prevented the alleged deprivation of constitutional guarantees. (See Docket No 217-7 at 7-14.) In support of this conclusion, Plaintiffs allege that the Supervisors failed to sufficiently address administrative complaints that were lobbied against the officers of the PRPD and the JDMP. The court finds that based on the evidence provided, Plaintiffs have failed to proffer evidence sufficient to establish supervisory liability under § 1983.

In asserting these claims, Plaintiffs fail to proffer evidence to rebut Defendants' showing that the Supervisors did, in fact, follow up on administrative complaints against the officers. (See Docket Nos. 197-10; 212-3.) None of Plaintiffs' proffered evidence has shown that any of the Supervisors have failed to install a system of administrative review, or that such a system is not presently in place. Additionally, the administrative records of the officers in question do not contain information that would necessarily have put the supervising officers on notice of a probable use of excessive force. For instance, the administrative record of Alvarado does not show a pattern of use of excessive force. Alvarado's record shows only one occasion where he has used his firearm. (See Docket No. 212-3) In regards to this incident, the PRPD conducted an investigation and determined that the weapon was used in self defense and that there was not sufficient evidence to impose any further administrative measures. (See Id.) There is also no record of excessive force claims against JDMP Officers Torres, Conde, or Echevarria. (See Docket No. 197-10.) The previous complaints about Torres, which Plaintiffs highlight, dealt with an assault on another officer, a dispute with his supervisor, and a domestic dispute. The court finds that this alleged conduct, which Plaintiffs aver should have put Torres' supervisors on notice of his violent character, is legally insufficient to put his supervisors on notice that he would apply unreasonably excessive force when dealing with a citizen in his role as a police officer. See Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 94 (1st Cir. 1994) (various complaints about officer, unrelated to the use of excessive force, were insufficient to put supervisor on notice that officer had propensity to assault citizens).

Moreover, even if Plaintiffs' allegations are true, Plaintiffs fail to provide sufficient evidence to establish causation between the alleged failure to supervise and the resulting conduct. See Id. ("The inference that because [an inferior officer] had not been sanctioned with respect to [prior]

**Civil No. 07-1146(GAG)**                           10

incidents, he believed he could get away with anything, including assaulting [a citizen], is simply too tenuous"). Plaintiffs have attempted to demonstrate this necessary element of causation using only the conclusions proffered by the affidavit of an expert. Such conclusory allegations are insufficient to discharge the nonmovant's burden under a motion for summary judgment. See Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990).

Finally, even if it is true that the Supervisors failed to sufficiently address administrative complaints made against the officers, and such an oversight resulted in the alleged misconduct, Plaintiffs have failed to offer evidence to show how the individual Supervisors were deliberately indifferent to the possibility of such conduct occurring. See Febus-Rodriguez, 14 F.3d at 94 (failure to sanction did not automatically amount to reckless indifference on part of supervising officer); see also Germany v. Vance, 868 F.2d 9 (1st Cir. 1989) (an official displays deliberate indifference "when it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights").

With regard to the "failure to train" claim, the court finds that Plaintiffs have not provided sufficient evidence to establish this claim. See Whitfield, 431 F.3d at 14 (finding record deficient because "plaintiffs fail[ed] to show that there were any training deficiencies, much less that the mayor or the police commissioner should have known that there were training problems"). Plaintiffs' evidence fails to rebut the fact that JDMP Officers Conde, Torres, and Echevarria were fully trained by the Puerto Rico Police according to the policies of the Puerto Rico Police Department.[2]  Moreover, Plaintiffs' have not provided any evidence of other misconduct to

---

[2] The court in Whitfield recognized that because the municipality was legally required to have its officers trained by the Puerto Rico Police Department, which has a stated policy regarding the use of deadly force, defendants had sufficient evidence to oppose a bare allegation of a failure to train:

> As a municipality of Puerto Rico, [Juana Diaz] is subject to the Commonwealth's "Municipal Police Act." See 21 P.R. Laws Ann. § 1061, et seq. Under the Act, all the members of a municipal police force must complete "the basic training courses offered by the School of Police Science of the Puerto Rico Police Academy." 21 P.R. Laws Ann. § 1066. They must pass "an intensive preparatory course which shall be

**Civil No. 07-1146(GAG)**                    11

demonstrate a pattern of behavior that has resulted due to a failure to train. See Fabiano v. Hopkins,

352 F.3d 447, 452 (1st Cir. 2003) (absent some other evidence of an unconstitutional policy or

custom, "a single incident of misconduct cannot provide the basis for municipal liability under §

1983").

Plaintiffs have failed to offer sufficient evidence to create a genuine issue of material fact

concerning the supervisory liability of the Supervisory-Defendants. Therefore, the court **GRANTS**

Defendants' motion for summary judgment with respect to the §1983 claims premised on municipal

and supervisory liability.

> *D.    Qualified Immunity Defense*

Defendants contend that the individual officers are not subject to liability for their actions

because they are entitled to the defense of qualified immunity. The qualified immunity doctrine

shields government officials performing "discretionary functions from . . . civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would not have known." Harlow v. Fitzgerald, 457 U.S. 800, 801 (1982); see also

Rivera-Ramos v. Ramon, 156 F.3d 276 (1st Cir. 1998). "[A] defendant who claims qualified

immunity must do so either [1] on the theory that the asserted right is not clearly established or [2]

on the theory that the conduct attributed to him satisfies the test of objective legal reasonableness."

Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998).

With respect to the liability of Officers Alvarado and Torres, the court is unable to grant

summary judgment on ths issue of qualified immunity. The same contested facts, as already

discussed, present a genuine issue of material fact as to whether or not the occupants of the vehicle

were armed. As the objective reasonableness of the officers' conduct is directly contingent upon the

------

designed in coordination with the Commonwealth Police and which shall be
administered by the Commonwealth Police Academy." 21 P.R. Laws Ann. § 1067(e).
Local police are not certified as "Municipal Police Officers" until they meet the
training requirements of the Commonwealth Police Department. See 21 P.R. Laws
Ann. § 1063.

Whitfield, 431 F.3d at 11 n.6.

**Civil No. 07-1146(GAG)**                          12

jury's determination of this contested issue, the court cannot grant summary judgment under this prong.  Further, the courts analysis of the facts under the second prong fails as well, as the asserted right of citizens to be free from the excessive use of force, specifically deadly force, is clearly established under the law.  <u>See</u> U.S. Const. amend. IV.  Therefore, the court is unable to make a ruling on summary judgment as to these Defendants' claims of qualified immunity.

Additionally, the court is unable to grant summary judgment on Defendants' claim of qualified immunity with respect to the personal liability of Sgt. Colon and Officer Conde.  The reasonableness of the Officers' actions in failing to intervene is directly related to whether or not the occupants of the vehicle were armed.  As this fact is clearly a contested issue, the court is unable to grant summary judgment on the issue of qualified immunity based on the reasonableness of the officers' conduct.  Further, under the second prong of the analysis, Defendants are unable to show that the law is unclear.  The law is clearly established that an officer who is present has a duty to intervene to prevent the use of excessive force by another officer.  <u>See</u> <u>Torres-Rivera v. O'Neill-Cancel</u>, 406 F.3d 43, 55 (1st Cir. 2005) (citing generally <u>Monroe v. Pape</u>, 365 U.S. 167 (1961)).  Therefore, the court **DENIES** Defendants' motion for summary judgment on the issue of qualified immunity.

**IV.     Conclusion**

For the foregoing reasons, the court **GRANTS** in part and **DENIES** in part Defendants' motions for summary judgment.

**SO ORDERED**

In San Juan, Puerto Rico this 6th day of November, 2009.


*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge