IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARMEN BURGOS-YANTIN, et al,

Plaintiffs

v.                                                    CIVIL 07-1146 (JA)

MUNICIPALITY OF JUANA DIAZ, et al,

Defendants

OPINION AND ORDER

This matter is before the court on motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b)(1)(C) filed by the co-defendants, Miguel Torres-Santiago and Gary Conde-González, on July 29, 2010.  (Docket No. 310.)  The co-defendants' motion was opposed by plaintiff, Carmen Burgos-Yantin, on August 12, 2010.  (Docket No. 311.)  The co-defendants replied on August 26, 2010.  (Docket No. 318.)  For the reasons set forth below, the co-defendants' motion for judgment as a matter of law is hereby DENIED.

I. OVERVIEW

This is a case brought under 42 U.S.C. § 1983, the Civil Rights Act of 1971, and includes supplement claims under Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141.  (Docket Nos. 1 & 84.)  Plaintiffs alleged that the civil rights of Miguel Angel Burgos were violated by officers from the Police of Puerto Rico and the Municipality of Juana Díaz when they used or allowed the use of

CIVIL 07-1146 (JA)                              2

excessive force leading to his shooting and death.  (Id.)  A negligence claim was also included in the complaint.  (Id.)

     The case was tried by a jury in June of 2010, and on the ninth day of trial and second day of deliberations, the jury returned a verdict dismissing the Civil Rights Act claims but rendering a verdict in favor of one of the nine plaintiffs, Carmen Burgos-Yantin,  on the supplemental negligence claims.  (Docket Nos. 281 & 300.)  The jury awarded damages against officer Miguel Torres-Santiago in the amount of $25,000 and against officer Gary Conde-González in the amount of $5,000.  (Docket No. 301.)  The jury rendered a judgment in favor of the third defendant, Lt. Angel Colón-González.  (Docket No. 306.)  On July 29, 2010, the two remaining defendants moved  for judgment as a matter of law under Fed. R. Civ. P. 50. (Docket No. 310.)  Plaintiff opposed the motion on August 12, 2010. (Docket No. 311.)   On August 26, 2010, the co-defendants filed a reply to plaintiff's opposition to their motion for judgment as a matter of law.  (Docket No. 318.)

     The co-defendants, officers Miguel Torres-Santiago and Gary Conde-González, note that ultimately the verdict rendered by the jury was in favor of Carmen Burgos-Yantin for her pain and suffering.  (Docket No. 310, at 5.) However, they argue that the verdict cannot stand because the jury did not find

CIVIL 07-1146 (JA)                          3

any liability against them for the death of Miguel Angel Burgos.  (Id.)  Thus, there is a lack of causation between the actions or omissions of the co-defendants and damages suffered by the recovering plaintiff.  (Id.)  The co-defendants stress that they were "acquitted" by the jury of having violated the decedent's constitutional rights.  (Id.)  They further argue that they were "acquitted" of the civil rights violation claim, which claims gave subject-matter jurisdiction to the court.  (Id.)  Such claims were the ones upon which plaintiffs pinned their hopes to prevail since the allegation was that Miguel Angel Burgos died as the result of the use of unreasonable excessive force under the Fourth Amendment.  (Id.)

     Officers Miguel Torres-Santiago and Gary Conde-González  argue that the state tort claim is contingent upon the civil rights allegations since the same facts giving rise to the civil rights action also give rise to the state tort action.  (Id.)  They argue that the claims of Carmen Burgos-Yantin are contingent upon a finding of liability against them for the death of Miguel Angel Burgos.  (Id. at 6.)  They stress that there is no independent set of facts that would support a theory of liability against them for the mental anguish of Carmen Burgos-Yantin.  (Id.)  The co-defendants compare the elements of a civil rights action and a state negligence action, and emphasize that it was not shown that they were negligent, nor that they  breached their duty of care as to Miguel Angel Burgos, more so

CIVIL 07-1146 (JA)                        4

since it was not proven that their acts or omissions were the proximate cause of his death.  (Id. at 7.)   They also argue that like in Acevedo-Feliciano v. Ruiz-Hernández, 296 F. Supp. 2d 142 (D.P.R. 2003) the jury verdict cannot be sustained because plaintiff's tort claim under Art. 1802 is based on the same conduct that gave rise to the § 1983 claim that was dismissed.  (Id.)

Plaintiff opposes the motion for judgment as a matter of law stressing that there are different standards for a civil rights violation and a negligence action, that a violation of civil rights entails more than mere negligence.  (Docket No. 311, at 1.)   She argues that the finding of the jury that there was no constitutional violation does not preclude the finding that the co-defendants Miguel Torres-Santiago and Gary Conde-González were negligent.  (Id.)   Plaintiff notes that the verdict form for the state law negligence claims was "different" as it only asked two questions, (1) if the negligence of the co-defendants caused damages, and (2) the amount of damages.  (Id. at 2.)   Instead of being asked three questions as to the civil rights claims, the jury was only asked two questions, but one was really two in one.  (Id.)   Thus the jury was forced to answer two questions in one.  (Id.)   Plaintiff claims that for the jury to answer yes to the first question, it arguably had to answer yes to both propositions, that is, that the co-defendants were negligent, and that their negligence caused

CIVIL 07-1146 (JA)                         5

damages.  (Id.)   Thus, according to plaintiff the verdict reflects that officers

Miguel Torres-Santiago and Gary Conde-González were negligent and that even

though Miguel Angel Burgos suffered no damages, she did.  (Id.)  Plaintiff argues

that this conclusion is supported by the evidence at trial.  (Id.)  Specifically,

plaintiff claims that the pathologist testified that Miguel Angel Burgos became

unconscious immediately upon being shot.  (Id.)  She also claims that the

negligence verdict is arguably supported by the testimony of Lou Reiter, the

police procedures expert, who testified that the intervention with the target

vehicle, including shooting at it, was not within standards since the shooting

placed in danger the occupants of the vehicle as well as nearby people.  (Id.); See

Burgos-Yantin v. Diaz, ___ F. Supp. 2d ____, 2010 WL 1233793 (D.P.R. March

31, 2010).  Plaintiff argues that officer Gary Conde-González could have stopped

officer Miguel Torres-Santiago from shooting at any time after any of the more

than 10 shots fired from a weapon which was not an automatic.  (Docket No.

311, at 2.)  Plaintiff also argues that the deposition testimony of Osvaldo Medina-

Echevarria further supports the negligence verdict.  (Id. at 3.)   After

distinguishing the facts of Acevedo-Feliciano v. Ruiz-Hernández, cited by the

defendants, from those in this case, plaintiff asks for an alternative relief in the

CIVIL 07-1146 (JA)                              6

event that I find that the verdict form confused the jury, that is, that a new trial be held.  (Docket No. 311, at 3.)

Finally, in their reply memorandum the co-defendants argue that plaintiff's memorandum contains fairly undeveloped arguments in relation to the survival of the negligence cause of action, to the causation of the death of Burgos, and the confusion of the jury as a result of the verdict form.  (Docket No. 318.)

## II. STANDARD OR REVIEW

A motion for judgment as a matter of law is appropriate if there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party. See Richards v. Relentless, Inc., 341 F.3d 35, 41 (1st Cir. 2003) (internal quotations and citations omitted); see also Guilloty-Pérez v. Pierluisi, 339 F.3d 43, 50 (1st Cir. 2003); Quiñones v. Puerto Rico National Guard, 663 F. Supp. 2d 44, 46 (D.P.R. 2009);  González-Pérez v. Gomez-Aguila, 312 F. Supp. 2d 161, 164 (D.P.R. 2004).  The court must "examine the evidence and all fair inferences in the light most favorable to the plaintiff [and] may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence."  Katz v. City Metal Co., 87 F.3d 26, 28 (1st Cir. 1996) (quoting Richmond Steel, Inc. v. P.R. Am. Ins. Co., 954 F.2d 19, 22 (1st Cir. 1992)); González-Pérez v. Gomez-Aguila, 312 F. Supp. 2d at 164.  If from the evidence

CIVIL 07-1146 (JA)                    7

presented at trial, fair minded persons could draw different inferences, then the matter is for the jury to resolve and judgment as a matter of law is not appropriate.  Espada v. Lugo, 312 F.3d 1, 2 (1st Cir. 2002).  But the non-moving party must have presented "'more than a mere scintilla' of evidence" to survive a motion for judgment as a matter of law and cannot rely on "conjecture or speculation."  Katz v. City Metal Co., 87 F.3d at 28 (quoting Richmond Steel, Inc. v. P.R. Am. Ins. Co., 954 F.2d at 22) ; González-Pérez v. Gomez-Aguila, 312 F. Supp. 2d at 164.

The evidence in the light most favorable to the non-moving party reflects that on the evening of October 28-29, 2006, José Esmurria, also known as Hipito, and the decedent Miguel Angel Burgos were passengers in a 1993 maroon colored Mitsubishi Mirage being driven by Osvaldo Medina-Echevarria, the son-in-law of Carmen Burgos-Yantin.[1]  At an intersection overlooking the Juana Díaz, Puerto Rico boardwalk at Camboya ward, the vehicle, which had been traveling north to south perpendicular to the boardwalk, was stopped at about 12:15 A.M. by Municipal police officer Miguel Torres-Santiago.  Officer Gary Conde-González proceeded to provide back-up from the traditional covering position at the rear

---

[1] A pre-trial version of the facts are related in a previous opinion and order. See Burgos-Yantin v.Municipality of Juana Díaz, 669 F. Supp. 2d 191, 194-95 (D.P.R. 2009).

CIVIL 07-1146 (JA)                              8

right corner of the stopped vehicle as officer Miguel Torres-Santiago approached

the driver's side of the vehicle.  In accordance with a prior work plan, the officers

were enforcing Law 22 and the Public Order Code.  The reason for the vehicle

stop was that neither person in the front seats of the vehicle was wearing a

seatbelt.  The vehicle made a left hand turn following the instructions of officer

Miguel Torres-Santiago, and then stopped on the right side of the road parallel to

the boardwalk.  Officer Miguel Torres-Santiago asked the driver for the driver's

license and registration.  The driver, Osvaldo Medina-Echevarria,  produced a

learner's permit (both other occupants were minors) and an expired vehicle

registration, placing his right hand between his legs and reaching for the glove

compartment with his left hand, after first putting the interior light of the vehicle

on.  Officer Miguel Torres-Santiago could not see his right hand.  The officer then

went back to his own patrol car which was about 10 to 12 feet behind the

Mitsubishi Mirage and across the street, pointing in the same direction.  The

vehicle permit sticker of the stopped vehicle was also expired.  As officer Miguel

Torres-Santiago was writing the corresponding citations, officer Gary Conde-

González approached him from where he had been standing behind the Mitsubishi

Mirage and told him that the driver of the vehicle had pulled out a pistol and had

placed it under the driver's seat.  At that very moment, a police car of the Police

CIVIL 07-1146 (JA)                              9

of Puerto Rico Tactical Operations Unit ("PRTOU") entered the scene with officers José Alvarado-Almodovar and Harry Ortiz.   The police car stopped a short distance behind the Mitsubishi Mirage.   Officer Miguel Torres-Santiago then told those officers that they were issuing citations and that officer Gary Conde-González had told him that the driver had put a pistol under his seat.   As Officer Miguel Torres-Santiago made hand signals to Lt. Angel Colón-González, the over all supervisor, and Sgt. Francisco Laboy, officer Miguel Torres-Santiago's immediate supervisor, to come to the scene, the PRTOU officers intervened with the occupants of the Mitsubishi Mirage.   Officer José Alvarado-Almodovar, with rifle in hand,  instructed the driver to turn off the engine.   The driver, fearing for his life, did not do so but rather revved up the motor and drove off at a high speed, at which time officer José Alvarado-Almodovar shot at the vehicle to disable the same.   (Officer Miguel Torres-Santiago did not see anyone in the vehicle pointing a weapon.   In deposition testimony, Osvaldo Medina-Echevarria denied carrying a gun in the car.)   As the vehicle took off from the scene on the road parallel to the boardwalk facing east, the road curved to the left, in the form of a capital D, to the exit road which then continued to road number 2, which runs along the south coast of Puerto Rico.   As the vehicle departed speedily from the stopped location,  officers  Miguel Torres-Santiago and Gary Conde-González

CIVIL 07-1146 (JA)                              10

ran north on the road to the area where the Mitsubishi Mirage would have to exit

the curve to leave the area.   As the vehicle approached the area where the two

officers had run to, it appeared to go toward the officers and then turned right to

leave the scene, according to the police version of the incident.  Osvaldo Medina-

Echevarria testified that the police officer came after them (on foot) shooting at

them.   He only saw one officer at that time.)   Officer Miguel Torres-Santiago

pushed officer Gary Conde-González  out of the way and fired several times at the

vehicle as it sped away.   All of the shots were fired by one police officer and

entered the vehicle from different angles at the rear, some from above.  The back

window of the vehicle broke, shattering into pieces.   After turning the curves,

Osvaldo Medina-Echevarria was hit in the leg with a bullet.   As the Mitsubishi

Mirage drove away, the windows of the car started falling and Miguel Angel

Burgos said, "Hold on to my head. I was shot."

Prior to the shots being fired, Lt. Angel Colón-González had been at a

location west of the vehicle stop along the same road running parallel to the

boardwalk.  While he had not witnessed the stop of the Mitsubishi Mirage, nor the

intervention of officer José Alvarado-Almodovar, he had been told by Sgt.

Francisco Laboy that officer Miguel Torres-Santiago had signaled them to go over

to the area where they were located.  When Lt. Angel Colón-González and Sgt.

CIVIL 07-1146 (JA)                          11

Francisco Laboy got to the area, officer José Alvarado-Almodovar was jumping

back from the Mitsubishi Mirage, and then shot at the vehicle.  Lt. Angel Colón-

González and Sgt. Francisco Laboy immediately took cover behind the PRTOU

patrol car which was behind the Mitsubishi Mirage.  From the area of cover, Lt.

Angel Colón-González  then heard other shots.  After he sought cover, he gave

no instructions to anyone.  He did not see officer Miguel Torres-Santiago shooting

and did not see anyone from the Mitsubishi Mirage carrying a weapon.  Lt. Angel

Colón-González then got into his police unit and proceeded to road 2.  There he

asked some people where the Mitsubishi Mirage went and they said that it went

on the road toward Santa Isabel.

The Mitsubishi Mirage, driven by Osvaldo Medina-Echevarria, proceeded to

the home of Carmen Burgos-Yantin.  Upon its arrival, Miguel Angel Burgos'

mother and other family members came out of the house.  She was told her son

had been shot by the police.  They placed Miguel Angel Burgos on their shoulders

and placed him in a Four Runner which then took off after Carmen Burgos-Yantin

told the driver to take her son to the hospital.  Osvaldo Medina-Echevarria was

placed in the car of a neighbor, and was also taken to a hospital.  Carmen

Burgos-Yantin then went into the house and asked her husband for the keys to

her van so she could go to the hospital.

CIVIL 07-1146 (JA)                              12

III. ANALYSIS

At the end of the closing argument of counsel, I gave the jury instructions to be applied to the facts proven during the trial.  After the jury instructions were given, there was a related discussion with counsel, but ultimately no objections were made to those instructions by either side of the case before the jury began to deliberate.  At sidebar, there was also a discussion about the verdict form and changes were made to the proposed verdict form upon suggestion of the defense, but ultimately there was no objection to the verdict form which was delivered to the jury for its deliberations.  Because the verdict form is seminal to the motion for judgment as a matter of law, and both sides argue that it is defective in relation to the verdict, I review the procedural history related to such form.

On May 10, 2010, I directed the parties to submit proposed verdict forms no later than seven days before trial, which was scheduled for June 14, 2010.  (Docket No. 260.)  The defendants filed a proposed verdict form on June 7, 2010.  (Docket Nos. 261 & 262.)   On June 8, 2010, ignoring even C. Northcote Parkinson's first law, plaintiffs sought two modifications to the defendants' proposed verdict form.  (Docket No. 265.)  First, they asked that the same question asked in section one of the form should also be asked in reference to Osvaldo Medina-Echevarria, the other shooting victim.  (Id.)  They also asked that

CIVIL 07-1146 (JA)                    13

the name Miguel Angel Burgos and Osvaldo Medina-Echevarria be added to every

question.  (Id.)  The defendants opposed this modification on June 11, 2010.

(Docket No. 271.)  That request was denied.  See Burgos-Yantin v. Municipality

of Diaz, ___ F. Supp. 2d ____, 2010 WL 2696784 (D.P.R. July 9, 2010).

Plaintiffs then filed an untimely proposed verdict form on June 11, 2010.  (Docket

No. 269.)  The defendants moved to strike the proposed form on the same day,

noting plaintiff's waiver and lateness, and quoting my admonition of June 8, 2010

(Order: Plaintiffs have failed to comply with my order of May 10 and Local Rule

51.  They should comply immediately with the order or suffer the normal

sanctions for disobedience. (Docket No. 264)) (Docket No. 271.)  The motion to

strike the proposed form was granted on June 13, 2010.  (Docket No. 275.)

Otherwise there was no objection by plaintiffs to the form proposed by the

defendants.

     As part of the instruction on the elements of the civil rights violation, the

jury was instructed that in order to prove such a violation, plaintiffs must have

proven by a preponderance of the evidence that the defendants committed the

acts alleged, that a federal right was lost, and that "in performing the acts

alleged, the defendants acted intentionally and recklessly." (Docket No. 295, at

22.)  They were further instructed that if they were to find "that the acts of the

CIVIL 07-1146 (JA)                    14

defendants were merely negligent, then, even if you find that the plaintiffs were injured as a result of those acts, [they] must return a verdict for the defendant on the Civil Rights Act claim." (Id. at 24.)  The jury was then instructed on the differences between acting intentionally, recklessly, and negligently.  (Id. at 25.)  They also received extensive causation instructions.  (Id. at 28-30.)

The jury was then instructed on the elements of a state negligence claim. (Id. at 34.)  They were told that plaintiffs had to prove (1) a negligent act or omission, (2) damages, and (3) a causal relationship between them. (Id.);  See Marshall v. Pérez-Arzuaga, 828 F.2d 845, 847 (1st Cir. 1987); Montalvo v. Cruz, 144 D.P.R. 748, 755 (D.P.R. 1998).  While the jury was not instructed on what constitutes negligence in the part of the instructions focusing on the state tort claim, they adequately received the definition in the section of the instructions related to the Civil Rights Act violation.  The jury also received an adequate causation instruction within the part of the instruction focused on the Civil Rights Act violation.  See Cf. Acevedo-Luis v.Pagán 478 F.3d 35, 39 (1st Cir. 2007.) While it may have been preferable to include the definitions within the section of the instructions related to the supplemental state tort claim, the jury instructions when read in whole provided the jury with sufficient guidance to render legally sufficient verdicts on the Civil Rights Act claim as well as the negligence claim.

CIVIL 07-1146 (JA)                    15

The verdict form asked the jury if the plaintiffs have "proven by a preponderance of the evidence that they have suffered damages caused by fault or negligence by Miguel Torres-Santiago." (Docket No. 262, at 4.)  They were asked the same question in relation to officer Gary Conde-González and Lt. Angel Colón-González. (Id. at 5 & 6.)

The co-defendants argue that this court held in Acevedo-Feliciano v. Ruiz-Hernández that when a Civil Rights Act claim has been dismissed against a defendant, and a negligence claim is based upon the same conduct that gives rise to the civil rights act claim, the jury verdict cannot be sustained as a matter of law.  However, as plaintiff points out, in Acevedo-Feliciano v. Ruiz-Hernández the jury determined that neither a constitutional nor state law violation occurred.  Also, in Acevedo-Feliciano v. Ruiz-Hernández, the tortious and unconstitutional acts were arguably committed by individuals who were exonerated by the jury, which nevertheless imputed liability to the municipality, based upon the precise acts of the exonerated individuals.  Because a finding of liability in relation to the municipality must be anchored on the liability of the individuals, the anchor failed and the court entered judgment as a matter of law in favor of the municipality. Id. at 146.  The analogy to this case is lost.  The jury here rendered a verdict reflecting their careful weighing of the evidence and elements of the causes of

CIVIL 07-1146 (JA)                              16

action.  It is difficult to find that this verdict form confused the jury.  There was no error in either the jury instructions or the verdict form ultimately submitted to the panel.

According to the jury, plaintiffs failed to establish any degree of causation to determine that any of the three defendants' acts or omissions lead to the violation of the decedent's civil rights.   However, they reached a verdict reflecting their decision that co-defendants Miguel Torres-Santiago Torres and Gary Conde-González were negligent, and that such negligence resulted in damages to Carmen Burgos-Yantin under Puerto Rico negligence law.  See   Cf. Landol-Rivera v. Cruz Cosme, 906 F.2d 791, 797 (1st Cir. 1990).  Therefore, the motion for judgment as a matter of law must be denied, as is plaintiff's request in the alternative that a new trial be held.  That request is untimely. "A motion for new trial must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(b).  Judgments were entered on July 1, 2010.  (Docket Nos. 302, 303, 306, & 307.)   Plaintiff requested a new trial as an alternative relief, almost as a postscript,  in the event that the court were to find that the verdict form was confusing.  (Docket No. 311, at 4.)  That request was made on August 12, 2010.  (Id.)  Therefore,  the request for new trial is late.

IV. CONCLUSION

CIVIL 07-1146 (JA)                                17

     In view of the above, the co-defendants' motion for judgment as a matter of law (Docket No. 310) is hereby DENIED as is plaintiff's motion for new trial (Docket No. 311).

     In San Juan, Puerto Rico, this 10th day of September, 2010.

                                        JUSTO ARENAS
                              Chief  United States Magistrate Judge